Good morning. I'm going to introduce the Court. My name is Howard Hahn. On behalf of the Petitioner, Mrs. Flavia Cahoon. Let me preliminarily thank the Court for hearing this case. In reviewing the transcript, the documents in the Immigration Court proceeding, it was that I was reading a strip of a soap opera or a novel. It's really confusing. The way I read it, and you help me if I've got a mistake in my reading, because I very well may. My thought was on getting a visa to come to the United States to marry your fiancée. The law is you dance with the one that brung you. And if you switch fiancées, you have to go back and come in again for the new fiancée. And my understanding of the fraud issue is fraud just flat out disqualifies you. And because she had gone through a marriage ceremony with one of these many men, I can't keep the name straight. She had to tell the officer, yes, or at least give an explanation, or else she was just being intentionally misleading or hiding the fact and that that's enough for fraud. What am I missing here? Well, Your Honor is correct in the first half of the analysis that the fiancée, under the judge's ruling, was apparently under Section 245d, supposed to only adjust status based upon that petition. But that would be the contention that we are disagreeing with. The second half of Your Honor's comments with respect to the allegation of not disclosing the prior marriage, Immigration Judge Barrett did comment on exactly what Your Honor pointed out, that she should have, in his opinion, disclosed that to the American consul so that the consular officer can then make the decision whether or not the legal conclusion of the validity of the marriage was valid or not would be the government official's call. However, the case cited by the Immigration Judge. Wait a minute. My understanding is that you're not contesting this. My understanding of your argument at this point is that you are only appealing on the question of whether she was barred from adjustment of status. That's correct, Your Honor. So the question of whether the IJ was right or wrong in concluding that there was in fact fraud here is not before us. That's correct. In Procurando's case, the temptation was there to say not to give in on a particular But you already have. You already have. Ignoring that, if I could just take one second to address it. The case that the Immigration Judge cited, matter of fact, in D.C. for the proposition of full disclosure, was also referenced by the State Department in its Foreign Affairs Manual in the same section, and it states there that the facts which are known to the government, which could be discovered by the government official in this Visa Lookout book or in the other records, if those facts are available, then there would not be any redundancy to foreclose. That doesn't matter because you're not contesting. If you want to contest it, go ahead and tell us why we should hear it. But if not, I mean, I had another problem with it because it seems to me that her story, which, as I said, it doesn't say would anybody ever have thought you were married. It said, well, you're married. And she said no because her position was she wasn't. But that's not before us. That's correct. Right. The real issue is Section 245d. Does that bar Mrs. Cajon from adjusting under her current husband's marriage because she had been married to one gentleman, a jury, back in the Philippines and then because of the ambiguity, she thought she wasn't. She is petitioned for by a Mr. Hammes to come to this country. She does marry Mr. Hammes in compliance with the terms of the Cajon fiancé visa. But unfortunately, Mr. Jury goes to the U.S. Embassy in the Philippines about a month after Mrs. Cajon filed for adjustment of status, writes an affidavit saying, hey, she's really married to me. She can't be married to Mr. Hammes. And therefore, she cannot adjust status with Mr. Hammes. She's my wife. In fact, she's the mother of my child. I'm the father of that particular child. So we take the position honestly. We look at the statutory language of Section 245d. It states here that the Attorney General may not adjust the status of name described in Section 101a15k. We are stating that she is not properly described as an alien fiancé under 101a15k because as Immigration Judge Barrett found, she was not a valid alien fiancé because of his finding of a prior undissolved marriage. So if she's not properly described as an alien fiancé in Section 245d, then the disability should not flow from that. And we find support in other cases, the Monet case that we submitted recently to the Court's attention, where this circuit held that for purposes, I believe there's a 212c waiver application. The Court ruled that the alien's permanent residence status was defective and therefore could not be the predicate basis for making an application for a waiver under Section 212c, which requires lawful permanent residency. And similarly, the Board of Immigration Appeals and the Coland-Ponge case in my brief also held that an alien whose initial immigrant visa was prepared by fraud and misrepresentation, in that case, the Coland-Ponge case, also involved a big misrelationship. The alien before the Court immigrated based upon the marriage to a citizen, but was previously — was still married to a previous spouse. So we have the same situation in this particular case where, except in the Immigration Judges' conclusion that the original marriage was still intact and was legally viable, then we don't have a valid K-1 entry. And therefore, she's not saddled. Mrs. K-1 is not subject to all the disabilities that any other person would be. The 28-G letter that you're talking about is the Monet case? Is that what you're talking about? I was — the Monet case that I submitted to the Supplemental Authority. All right. Go ahead. Now, it may seem, as the government put in this response brief, that this would be an absurd question, this woman who may be concealed in marriage or thought she was being a foreign lawyer. Why is the import of the Monet case, and there's also a Board case called Ayala, basically the opposite of what you're saying? It's basically to say that he does have this status even if he attained it fraudulently. Yes. So that she would have the status of a person under the fiancé application provision even if she shouldn't have. If I recall that Board decision in Ayala correctly, I believe that one had to do with a person who's committed a certain criminal offense that rendered him inadmissible. But in the Cole-Antoni case, which is very similar to this, we have a situation where the fact pattern directly impinged upon the validity of the visa. Not some collateral ground of inadmissibility under Section 212A, but the actual viability of the issuance of the visa making it illegal under Section 221 and 222 of the Immigration and Nationality Act. So if the visa is issued illegally, then she has no visa. She's effectively here as an alien in violation of the law. Now, of course, where does that leave us? We say we want a just status, but on the other hand, if she's here in violation of the law, how can she do that? Well, the same embraces that Congress had enacted, Section 245I, that states notwithstanding that you are here unlawfully, without inspection, or whatever reason, upon payment of that now $1,000 penalty, you may still adjust status. And then the consideration that the government has that, well, how can a person who committed fraud be permitted to adjust status? Well, that is addressed by Section 212I. The Immigration Law permits a waiver of grounds of fraud. So she does not get a free pass on this by any means. She has to convince the immigration judge that, yes, she deserves the waiver of the fraud. And even before we get to that, Section 245A is sufficient. Kagan. Or could she apply for adjustment of status based on her marriage to Hamas? Well, that brings up that line of BIA decisions, the Blair-Dixon-Dawson cases, where the board had held, notwithstanding the termination of that marriage, whether by divorce or death, she could still adjust status if she was married to Mr. Hamas within a 90-day period, and she was. But then we have this particular problem. If her prior marriage to a jury was legally existent, then is her second marriage to Mr. Hamas physically valid? And what you're basically saying is that although perhaps she should have been afforded the possibility of doing that, it wasn't going to work because it's likely, and you would assume, it would be found to be an invalid marriage. Well, that's correct, Your Honor. And that was concerning in terms of which approach you take to do that. You're not asking us to do that. Well, in the sense that it's there and it's something that the immigration judge failed to consider, and if he had considered it. And failed to tell her about, and maybe it's colorable, but are you asking us to do that?  Please consider that, Your Honor, because of the fact that if the immigration judge has firm guidance from this Court, and unfortunately, we don't have from the BIA because they affirmed this without any opinion, then the immigration judges would be aware of the situation and then in the future advise counsel. And the government law is not a judge. You're essentially saying in this instance it's unlikely to work, but she should have been given a chance. I think so, too. Then the her trial counsel could have been focused in more on the validity of the marriage. We've seen the transcript. The immigration judge acknowledges there are two different versions of the marriage issue. The first one is correct, and then we see in the record an attempted solicitation of a bribe from the accomplice. And the IJ and the BIA never actually decided the validity of the marriage issue because they decided that it didn't matter because she didn't give adequate information. So we don't have a ruling on the validity of the marriage at this point, is that right? That's correct. The immigration judge sort of asked, Your Honor, Justice McClendon, to point out, had said she should have disclosed it, but I think whether or not she should have disclosed it, I'm not going to be able to agree because of that. But that's the basis upon which he found her inadmissible. Correct. Not because the marriage was, in fact, an invalid marriage. That's correct. In fact, the judge had actually not reached that particular issue specifically. So we have a situation where we're saying, number one, as Your Honor just pointed out, well, perhaps under the Blair-Dixon-Dawson line of cases, the K-1 amendment should be permitted to continue on in a just status. Alternatively, we argue that 245d does not apply to her because she's not an alien fiancé as described in 101a-15k under 245d. And support for that decision is also found in the first sentence of 245d, where it apparently states there that the Attorney General may not adjust status of an alien lawfully admitted to the U.S. But let's say the Ayala case, for example, says that although she was her admission was in violation of law, if she was admitted to lawful permanent resident status and was in that status, then she is to be considered as someone in that status until it's revoked, essentially. All right. So why isn't that true here? Well, I think because, as I said earlier, the factual pattern that raises But that doesn't matter. It's a concept. The concept is that you have a certain status until you don't have that status, even if you've got a fraudulent one. Well, that's interesting, Your Honor, because in the Koh-Lantangi case, the BIA takes the opposite position, stating that, well, your biggest marriage vitiates your entry as a spouse of a U.S. citizen, therefore, you have no status upon which to base your claim for the waiver. So we have the BIA having two opposing positions. And I believe, regarding the Ayali case correctly, the Board dismisses an earlier case, and it may have been the Koh-Lantangi case or some other case that had the same situation, and dismissed it and said it's different without any reasoning to guide Your Honors as to which decision is right. Is it the Ayali case or the Koh-Lantangi case? And I would offer that the Koh-Lantangi case is more on point because they both, that case and this case, involve a bigamist relationship. On the other hand, the Ayali case involves a separate substantive ground of inadmissibility under 212A, which doesn't go to the underlying visa petition. So in this case, we have a visa petition, the validity of which is in question. And in the Koh-Lantangi case, we have a immigration based upon a visa status that is in question. In the Ayali case, we have a separate criminal case. Thank you, counsel. Thank you. Good morning again. My name is Curt Larson. I represent the Attorney General in this case. The plain language of 242D statutorily bars Kahoon from adjusting the status to that of permanent resume. The statute states the Attorney General may not adjust. What code section is that? It's 242D or 8 U.S.C. 1255D. That's what you stated at the beginning. If you come to this person to dance, you've got to dance with that person. So the statutory language states that you may not adjust the status of an alien lawfully admitted to the United States under a fiancé visa except to the U.S. citizen who filed the petition to have the fiancé brought to the United States. Plain letter law, that's what it says. It doesn't say may not unless you come in fraudulently. It doesn't say may not unless you marry somebody else. It doesn't say may not. There's no caveats to it whatsoever. It just says may not. Is the idea of the counterargument, you have to dance with the one that brung you unless he came in fraudulently, in which case you're not covered by the statute that says you have to dance with the one that brung you? However, yes. However, there's more to the dance than the one that brought you. You may not. It says you can, you can't, you may not. There's nobody else you can dance with. But I suppose, I mean, if we're to look at the policy issues, the person who comes in properly under 101A15K has an option of how she regularizes herself, which is by getting married to the right person. This here, the person did get married to the right person, and despite that, isn't being, is not being able to adjust status. So the question is whether this was intended to bar from any other adjustment of status, not this one, not the person who isn't being given the benefit of the statute. Right. And the way that the fiancé visa is set up, it basically states that when you get a fiancé visa, you have to understand a couple of things. First of all, you're going to get married within 90 days, number one. Number two is that you have to stay married to that individual for two years. And prior to that two-year expiration, 90 days prior to the two-year expiration, you have to apply for lawful permanent residency. So when we were talking earlier about if a person's a lawful permanent resident versus he isn't, again, you've got to realize there's a little difference with a fiancé visa in that you're a conditional permanent resident. And that's a special category set up just for K-1 visas. It doesn't have to be. And then this case gets even more complicated because she did do that, and she did in some theory remain married for two. She was married. She was unmarried. She was married to the second guy. She was denied the adjustment at the point that they weren't married, but later they were married again. It's very complicated. It is complicated, but it's simple in the same way. First of all, that issue wasn't raised which way, but let's go into it. The person has to, as I stated earlier, even, you know, married, unmarried or whatever, let's say that it happens within that two-year span, the thing they have to do that's affirmative on them is 90 days before the two years is up is apply for lawful permanent residentship. And she failed to do that, so. I thought there was a petition, but it was denied.  I think there was one, but it was denied. Okay. And it might have been because there was a breakup in time or they considered it that she was married to somebody else at that point. All right. So what about the next question? Could she get adjustment of status based on that marriage? I understand you would defend on the ground that it was never a valid marriage, but that determination has never been made. Am I right about that? The government would argue that it was made, and they didn't raise that it wasn't. Where was it made? That it was a fraud. That marriage wasn't a valid marriage. Where was that decision made by the IJ as a BIA? I thought it was never made. I believe that under the testimony she stated that she fraudulently stated in her application that she was never married before, and that came out that she was, in fact, married and there was a breakup. Yes. But then what happened was the IJ, and then she said, but I didn't think it was a valid marriage because that guy was also married before. I mean, this is a crazy story. And so the IJ never decided whether her marriage to Thomas was or wasn't a valid marriage. She said it doesn't matter because you should have given more information you shouldn't have answered that question, no, and you made a move from this representation. And I'm not – I thought he said specifically I'm not going to decide whether that marriage was a valid marriage or not. Am I wrong about that? I think you – yes, Your Honor. I think you're right. You're right about that. Okay. I'm right about that. So there's never been a determination made in this case, as I began saying, as to whether this was a valid marriage or not. You're correct, Your Honor. All right. So if – let's suppose it were – turned out to be a valid marriage. Could she adjust status based on that marriage? Okay. Let me ask the question to whom are we speaking. Thomas. Thomas. The guy who – the guy that she came in on the fiancé. She said it was a valid marriage and they had – they came over and they were married within 90 days and they had the two years prior to – the 90 days prior to the two years. Could she now adjust status based on that? No, because it's already gone past the two-year time period that she had to get married and put in the request to transfer over the law. So you think there's no waiver or no theory on which she could now? No. No, Your Honor. So therefore, the IAJ did not err by not informing her of that? No. Subject to your questions, that concludes my argument. Could you, as long as we do have a moment, walk me through the statutes? I find I keep getting lost when I try to walk through them. Just walk me through the proper chain of reasoning as I read the statutes. And it would help if you'd use the eight U.S.C. sites, because those of us who aren't immigration lawyers usually look for it in their U.S. code. The primary eight U.S.C. site you need to look at is eight U.S.C., 1255-D. Where do I start? What's the first section I should look at in order to get the logic right? To look at 1255-D and then you'll see that it – Start at 1255-D. And then once you get to 1255-D, your next roadmap is? So 1255 tells me when I plug in this woman's facts about it, the Attorney General – just go ahead. And then you would go to 1255-A. I don't think you understand what I'm asking for help with. I want you to plug statutes, talk generalizations. Cases are about specifics. And what I want you to do is restate the statute in specific terms, walk me through the logic of the reasoning. Never mind. I'm not getting it across. You should forget it. Just one minute, because I do have another question about the possibility of adjusting on the basis of HOMIS. I thought there was a provision that allowed some waiver of the time limits, no? All right. I'll look into that. Thank you. Thank you. Thank you, Counsel. I think we've gone way over time on appellant. No time was saved for rebuttal. CAHOONS v. Ashcroft is submitted.
judges: Noonan, Kleinfeld, Berzon